UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | | |
|---|---|---|
| ARNOLD E. EVERSOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 2:14-CV-99-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | **AND ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\* \* \*

This matter is before the Court upon cross-motions for Summary Judgment [DE 8, 9] on Plaintiff's appeal of the Commissioner's denial of his application for supplemental security income. [Tr. 9-24].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, ALJ Ena Weathers determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 16]. Under step two, the ALJ found that Plaintiff's chronic low back pain with

2

degenerative disc disease, vascular headache, a history of cervical strain, depressive disorder, borderline intellectual functioning, and tobacco abuse were "severe" as defined by the agency's regulations. [Tr. 16]; 20 CFR § 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 16-18]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform light work, but was limited to repetitive tasks in a low stress work environment, where work required frequent bilateral fingering. [Tr. 18]. Plaintiff was additionally limited to an environment with only occasional interaction with co-workers and the general public and occasional verbal instruction reminders from supervisors. [Tr. 18].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 22]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 23]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 23].

On this appeal, Plaintiff argues that the ALJ erred by not making a different finding of the plaintiff's residual functional capacity from the 2009 determination and by failing

3

to include Plaintiff's limitations regarding bilateral carpal tunnel and headaches in the hypotheticals presented to the vocational expert.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 44 years of age at the alleged disability date. [Tr. 17, 22]. Although he graduated from high school, he testified that he is unable to read. [Tr. 43]. Plaintiff filed a Title II application for a period of disability and disability

4

insurance benefits ("SSDI"), alleging disability beginning on May 23, 2009.[2] The claim was denied initially and upon reconsideration. [Tr. 12]. Plaintiff requested a hearing with the ALJ, which took place on December 13, 2012. [Tr. 12]. The ALJ issued an unfavorable decision denying SSI on January 23, 2013. [Tr. 9].

The plaintiff alleges that he has degenerative disc disease, diabetes, depression and anxiety, carpal tunnel and pain in his wrist and elbows, pain in his feet, legs, arms, and several hernias. [Tr. 37-40; 45-47; 228]. He treats the pain with Ibuprofen and Oxycodone, and takes Lisinopril for his blood pressure and Metformin for his diabetes. [Tr. 231].

Before the instant matter, on August 11, 2006, Plaintiff filed applications for disability insurance benefits and supplemental security income. These claims were denied initially and upon reconsideration. Following a hearing and review of the record, ALJ Gloria B. York issued a decision denying Plaintiff's application on May 27, 2009. [Tr. 73-84].

Notably, because Plaintiff did not seek review of that decision, the ALJ in the instant matter was limited to finding the Plaintiff was disabled after that decision, thus, after May 28, 2009. *See* 20 C.F.R. § 404.957(c)(1) (explaining that, where

---

[2] Plaintiff also filed an application for Title XVI, supplemental security income, which was denied because his resources were over the prescribed limits. This decision was not appealed and therefore is not addressed in this Opinion. [Tr. 12].

5

there is a previous finding on the same facts and issues that
has become final, this decision precludes a subsequent ALJ from
reconsidering those issues under res judicata); 42 U.S.C. §
405(h) (noting that the Commissioner's decision following a
hearing is binding). Furthermore, for purposes of claiming
disability benefits, Plaintiff's date last insured was June 30,
2009. Thus, he was required to establish disability on or before
that date. *See* 42 U.S.C § 423(a)(1)(A), (c)(1); SSR 83-10
(S.S.A. 1983) ("Under title II, a period of disability cannot
begin after a worker's disability insured status has expired.").
Plaintiff does not dispute these date restrictions. [DE 8-1 at
2]. In sum, ALJ Weathers was limited to determining whether
Plaintiff was disabled between May 28, 2009 and June 30, 2009.
There is little to no record specifically referring to
Plaintiff's condition within this short period and, thus, the
ALJ looked to the record following before and after this period
to inform its decision, paying closer attention to the records
close to the period between May and June of 2009.

In April of 2009, Plaintiff was seen by Dr. Kendall Hansen
for pain management in his neck, midback, and low back as a
result, according to the record, of his car accident in 2006.
[Tr. 281-85]. Then, in July of that year, Plaintiff was treated
at St. Luke Hospital West Emergency room, complaining of
numbness in his left wrist. The radiology report indicates "no

6

significant bone, joint, or soft tissue abnormality demonstrated." [Tr. 289]. That same month, and again in October of 2009, Plaintiff was treated at Northkey Community Care for depression and chronic back pain. [Tr. 310-17]. Records from St. Luke Hospital on July 13, 2009 indicate evidence of Plaintiff having bilateral carpal tunnel syndrome. [Tr. 459].

In August of 2009, Plaintiff was treated at Progressive Healing Solutions where complained of pain in his neck, chest, back and wrists. At Progressive in October, 2009, he was prescribed medication for pain management and advised to wear wrist splits at night. [Tr. 350-55]. In September, 2009, Plaintiff received care at Healthpoint Family Care for hypertension and diabetes. [Tr. 317]. He was treated there again in October of 2009, for similar problems, but reportedly "doing well." [Tr. 318].

In connection with Plaintiff's application for benefits, Dr. Mark Kroger performed a psychological assessment of the plaintiff on December 7, 2009. Dr. Kroger observed Plaintiff to be "fair" in his style of responding, ability to follow instructions, and overall motivation and persistence. Dr. Kroger also noted "some tendency to maximize reports of symptomatology." [Tr. 368-69]. Plaintiff's full scaled IQ result was 71, and Dr. Kroger assessed Plaintiff as moderately impaired in his ability to understand simple directions, to relate to

7

others, and tolerate stress and pressure to accept criticism. Dr. Kroger diagnosed Plaintiff with pain and mood disorder, as well as reading and written language disorder, borderline intellectual functioning, and multiple chronic pain sites. [Tr. 371].

From 2009 until 2012 Plaintiff was treated by Dr. Gary Shearer for pain management. [Tr. 402-504; 514-81]. The Kentucky State Board of Medical Licensure suspended Dr. Shearer's medical license in September of 2012, requiring Plaintiff to seek care elsewhere. In November of 2012, Plaintiff was treated at Metro Pain Relief Center, presenting with shoulder, mid and low back pain, knee pain, and intermittent tingling and numbness in his elbow, arm, and wrist. Tests results indicated chronic degenerative changes in several places and carpal tunnel syndrome at the wrists. [Tr. 585].

On August 8, 2011 non-examining consultative physician Dr. David Tessler performed an initial review of Plaintiff's record and found insufficient evidence to make a determination. Upon reconsideration, on November 25, 2011, Dr. Allen Dawson adopted ALJ York's 2009 decision concerning Plaintiff's physical issues through June 30, 2009. [Tr. 101-03]. On November 22, 2011, non-examining consultative physician Dr. Larry Freudenberger reviewed Plaintiff's record relating to his mental issues and also adopted ALJ York's 2009 decision, provided Plaintiff was

8

"limited to routine, repetitive tasks in a low stress work environment." [Tr. 103].

Vocational expert Ms. Deborah Dutton-Lambert testified at the hearing before the ALJ. [Tr. 62-71]. Ms. Dutton-Lambert testified that a person with an RFC equivalent to ALJ York's 2009 finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 64]. However, Ms. Dutton-Lambert found that there would be jobs in the national economy that someone with that RFC could perform. [Tr. 64-65]. Ms. Dutton-Lambert also concluded that a hypothetical person with the RFC equivalent to the ALJ's finding for Plaintiff could find competitive employment. [Tr. 65-66].

Plaintiff testified that he suffers from pain in his fingers up to his elbow, that the left hand feels constantly numb while the numbness and pain in his right hand goes on and off, and that he has lost strength there. [Tr. 45]. He registered his pain at seven out of ten and stated that although he is taking medication to treat it, he is never without pain. [Tr. 46]. He has problems sleeping due to the pain, and has to be careful in the shower, claiming that he falls at least once a week. [Tr. 51]. In the past, Plaintiff worked as a courier driver but reported that he can no longer do the sitting and driving. [Tr. 44]. Plaintiff also testified that he suffers from depression and has had thought of suicide. [Tr. 48].

9

## IV. Analysis

Plaintiff raises three arguments to support his claim, and the Court will address each in turn.

**1. The ALJ did not err by adopting the prior RFC determination with added limitations based on her independent review of the record.**

Plaintiff argues that there is new and additional evidence providing the basis for a different finding of Plaintiff's residual functional capacity, departing from the 2009 determination by ALJ York. Specifically, Plaintiff argues that Dr. Kroger's findings in December, 2009, of the plaintiff's severe depression, anxiety, and psychological functional limitations should have been included in the hypothetical to the vocational expert. Furthermore, Plaintiff relies on records from Northkey Community Care to argue that the ALJ should deviate from the prior ruling and conclude that Plaintiff is limited in that he would be "off task" 25% of the day.

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d 837, 842 (6th Cir. 1997). The SSA incorporated this holding in AR 98-4(6), in which it instructed ALJs to adopt the findings in prior claims "unless there is new and material evidence relating to such a finding." AR 98-4(6). In *Ealy v. Comm'r of Soc. Sec.*, the Sixth Circuit found that

10

where new evidence suggested deterioration of the claimant's condition since an earlier ALJ's finding, it was proper for an ALJ to independently review the record, adopt the prior finding with additional limitations based on the updated review. 172 F. App'x 88, 90 (6th Cir. 2006); *see also Williams v. Colvin*, No. 7:13-CV-98-JMH, 2014 WL 1513181, at *4 (E.D. Ky. Apr. 16, 2014).

In the instant matter, ALJ York found in 2009 that the plaintiff was limited to light work (he could lift and carry 20 pounds occasionally and ten pounds frequently and stand and walk six hours out of eight, *see* 20 C.F.R. 404.1567(b)), and additionally limited to routine, repetitive tasks in a low stress work environment. [Tr. 80]. In the 2013 determination that is under review by this Court, the ALJ performed an independent review of the record and found that the 2009 RFC was still appropriate with added limitations, including that plaintiff was limited to frequent (rather than constant) bilateral fingering, occasional interactions with co-workers and the public, and occasional verbal instruction reminders from supervisors. [Tr. 18].

Thus, Plaintiff's argument that there is new and additional evidence that must be included in the RFC fails for several reasons. First, ALJ Weathers' 2013 finding takes account of an updated review of Plaintiff's medical record and includes

11

additional limitations based on her review. This is proper under *Drummond* and *Ealy*.

Second, in its RFC determination and in the hypothetical posed to the vocational expert, the ALJ took account of the psychological limitations Plaintiff asserts should be included. Among the limitations added by ALJ Weathers is that Plaintiff is limited to occasional interaction with co-workers and the general public and occasional verbal instruction reminders from supervisors. These limitations relate specifically to Plaintiff's claims of depression and anxiety and Dr. Kroger's finding of borderline intellectual functioning on the part of the plaintiff, and the ALJ acknowledges as much in her finding. [Tr. 20].

Third, the evidence does not support Plaintiff's contention that he should be additionally limited as "off task" 25% of the day. Plaintiff relies on medical records from 2007 for this argument. Not only do 2007 records not paint an accurate picture of the Plaintiff's condition during the relevant time period between May and July of 2009, they also provide no support for the proposition that there is new or additional evidence to serve as a basis for a departure from the 2009 ruling. Furthermore, the records from Northkey Community Care closer to the relevant time period (the July and October 2009 visits) present no new or additional evidence that would warrant a

12

departure from the 2009 finding nor serve as the basis for an additional limitation.

**2. The ALJ did not err when it did not include specific limitations for Plaintiff's bilateral carpal tunnel complaints in the hypothetical posed to the vocational expert.**

Plaintiff contends that the ALJ should have included limitations relating to a diagnosis of bilateral carpal tunnel in its hypotheticals posed to the vocational expert.

ALJ Weathers found that, although the claimant was diagnosed with carpal tunnel syndrome in his left wrist after the date last insured, she would further reduce the residual functional capacity to light jobs with frequent (as opposed to constant) bilateral fingering "in consideration of his alleged degenerative disc disease, vascular headache, history of cervical strain, and possible symptoms related to recently diagnosed carpal tunnel syndrome." [Tr. 19-20]. Thus, in the second hypothetical posed to the vocational expert, the ALJ described a hypothetical person limited to frequent bilateral fingering, among other things. [Tr. 65-66].

Any more specific or more serious limitation is not supported by substantial evidence. There is no evidence in Plaintiff's medical record to indicate that during the relevant time period, from May 2009 to July 2009, or even in the several months following and on into 2012, Plaintiff's treating

physicians advised anything more serious than wearing wrist braces at night. Similarly, the ALJ found no evidence of a more serious condition, noting that the claimant did not require surgery or physical therapy, nor an ambulatory device, and did not take any other measures to accommodate or treat his conditions. [Tr. 21]. Therefore, the limitations relating to Plaintiff's bilateral carpal tunnel problems that the ALJ did include in the hypotheticals and RFC were supported by substantial evidence.

### 3. The ALJ did not err when it did not include specific limitations concerning Plaintiff's headaches in the hypothetical posed to the vocational expert.

Plaintiff contends that the ALJ should have included limitations relating to Plaintiff's headaches in its hypotheticals posed to the vocational expert. In particular, Plaintiff relies on a medical questionnaire he completed in October of 2009 reporting five-hour long headaches at least twice per week. [Tr. 207]. Plaintiff argues that such headaches could lead to missing work and an inability to sustain attention and concentration. Plaintiff points to no medical record to support his argument, however.

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)

14

(citing *Young v. Sec'y of Health & Human Servs.*, 925 F2d 146, 150-51 (6th Cir. 1990)). Furthermore, an ALJ may consider the credibility of the claimant when making this determination and "an ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility." *Id*. (internal quotation marks and citations omitted).

Plaintiff's medical record is scattered with his complaints of migraine and headache, as well as reports that these complaints were helped with medication. [*Compare* Tr. 199 with Tr. 351, 353]. There is no indication in the medical record, and Plaintiff has cited to none, that his headaches preclude him from work. The ALJ similarly found, noting Plaintiff's complaints of headache but concluding that there was no evidence showing he was prevented from "a reduced level of light work." [Tr. 21]. Furthermore, the ALJ found that the Plaintiff was not entirely credible. This conclusion was based on the plaintiff's testimony and medical evidence, as well as Dr. Kroger's psychiatric assessment in which Dr. Kroger noted that he suspect Plaintiff was maximizing reports of symptomatology. [Tr. 371]. Accordingly, the Court finds that the ALJ's decision to not include a limitation specifically relating to Plaintiff's headaches in the RFC or in its hypothetical to the vocational expert is based on substantial evidence and is without error.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 8] be, and the same hereby is, **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [DE 9] be, and the same hereby is, **GRANTED**.

This the 7th day of January, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge